

WINSTON
&STRAWN     North America   Europe   Asia

35 W. Wacker Drive
Chicago, IL 60601
T +1 312 558 5600
F +1 312 558 5700

**DAN K. WEBB**
Partner
(312) 558-5856
dwebb@winston.com

March 13, 2014

**VIA ECF**
Hon. Vernon S. Broderick, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

Re:    *TreeHouse Foods, Inc., et al. v. Green Mountain Coffee Roasters, Inc. et al.*, 1:14-cv-905-VSB

Dear Judge Broderick:

      Plaintiffs present an 89 page complaint (141 pages with exhibits) setting forth detailed facts to show that Keurig Green Mountain, Inc. ("Defendant"),[1] has committed numerous anticompetitive acts to unlawfully maintain its monopoly, notwithstanding the expiration of relevant patents covering cups compatible with Keurig brewers. Defendant's characterization of Plaintiffs' attempts to compete as an effort at "free riding" speaks volumes of Defendant's anticompetitive culture. Far from being a blameless "innovator," the Court of Appeals for the Federal Circuit characterized Defendant's actions as calculated "to impermissibly restrict purchasers of Keurig brewers from using non-Keurig [cups] by invoking patent law."[2] Rather than permitting competition on a level playing field, Defendant has unlawfully restrained competition, among other ways, by: (1) coercing companies at every level of the distribution system to enter into exclusionary agreements restraining competitors' ability to compete on the merits; (2) filing sham litigation; (3) working to eliminate access to new brewers designed to lock out competitive cups; and (4) interfering with business relations by confronting customers with Defendant's plan to exclude Plaintiffs from the market.

      The proposed motion would waste this Court's and Plaintiffs' resources because it will not result in disposition of the case or reduction of discovery. Defendant focuses on individual claims for exclusive dealing, anticompetitive product redesign, technological tying, monopoly leveraging, patent misuse, conspiracy, and sham litigation,[3] but fails to acknowledge that the very same conduct at issue for those claims is also relevant to Plaintiffs' general monopolization claim. *See* Compl. Count 1 ¶¶ 308-14; *see, e.g.*, *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 699 (1962) ("[P]laintiffs should be given the full benefit of their proof, without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."); *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003) (The "court must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation."). The same conduct also supports causes of action that Defendant apparently does not intend to challenge, including attempted monopolization, concerted refusals to deal, and all of Plaintiffs' state law claims. *See, e.g.*, Compl. Counts 8-18 ¶¶ 358-410.

      Nor would a motion to dismiss be successful on the individual claims. Defendant attempts to justify its exclusionary agreements and anticompetitive product redesign on the ground that these are

---

[1] Counsel provide their letter on behalf of "Keurig Green Mountain, Inc. ('Defendant')." We follow the same convention here.
[2] *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1374 (Fed. Cir. 2013).
[3] Defendant does not, however, assert any case law with respect to the conspiracy, tying, or sham litigation claims.



intended to protect Keurig's alleged innovations and to "ensure that the beverage is brewed correctly and safely." However, it would be inappropriate at this stage for this Court to evaluate any such purported procompetitive rationales. The Second Circuit applies a "fact-intensive [rule of reason] analysis" to these claims, which requires "the factfinder [to] weigh[ ] all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Expressions Hair Design v. Schneiderman*, No. 13 Civ. 3775, 2013 WL 5477607, at *13-14 (S.D.N.Y. Oct. 3, 2013) (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007)); *see, e.g.*, *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 389 (S.D.N.Y. 2007). "[T]his factual inquiry is not appropriate for resolution at [the motion to dismiss] stage of the litigation," but rather is a task for "the Court or a jury" after evidence has been discovered and presented. *Xerox*, 511 F. Supp. at 389; *see also Reading Int'l Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 321-22 & n.12 (S.D.N.Y. 2003) ("[T]he Second Circuit has applied a complex burden-shifting framework … that does not lend itself to resolution on a motion to dismiss.") (citing *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir. 1993)). Therefore, Defendant's argument that Keurig 2.0's lock-out design and exclusionary agreements foster rather than impede competition presents a factual question that cannot be resolved on a motion to dismiss.

Indeed, this Court has previously rejected the argument advanced by Defendant here that the Complaint should be dismissed because Plaintiffs will not be able to show substantial foreclosure under *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 328 (1961). *See Virgin Atl. Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52, 66-67 (S.D.N.Y. 1994). As the Court held, whether agreements "'foreclose competition in a substantial share of the line of commerce affected'" is "a factual inquiry that is inappropriate" on a motion to dismiss. *Id.* (quoting *Tampa Elec.*, 365 U.S. at 629). The other two cases cited by Defendant similarly cannot support its argument because each resolved these factual issues *following a jury trial*. *See Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1234-35 (8th Cir. 1987); *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1164 (9th Cir. 1997).[4] Defendant's argument that the substantial foreclosure standard cannot be satisfied unless the challenged conduct has rendered Plaintiffs wholly "*unable* to compete" is belied by the case law upholding exclusive dealing claims alleging a much lower percentage of market foreclosure than is alleged here.[5] In particular, Plaintiffs allege that Defendant's exclusive agreements have foreclosed all or nearly all access to various market segments, including all domestic producers of non-filtered cup machinery (Compl. ¶ 184); domestic cup suppliers known to exist when Plaintiffs sought to enter the market (Compl. ¶¶ 188-89); virtually all meaningful coffee brands (Compl. ¶ 218); and, at a minimum, the "majority share" of distributors serving the Office Coffee Services market segment (Compl. ¶¶ 229-36).

*Verizon Communications v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407-08 (2004) is unavailing to Defendant. Trinko reiterated that the "right to refuse to deal with other firms" is not

---

[4] *Omega* did not hold, as Defendant asserts, that a plaintiff's increased sales "preclude[] a finding of foreclosure," but merely noted that success in entering the market was relevant to the court's analysis of barriers to entry. 127 F.3d at 1164.

[5] *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 70-71 (D.C. Cir. 2001) (40% is generally sufficient); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1297-98 (9th Cir. 1982) (24% foreclosure sufficient); *see also United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191-92 (3d Cir. 2005) ("The test is not total foreclosure, but whether the challenged practices bar a substantial number of rivals or severely restrict the market's ambit.").



"unqualified" and that "a refusal to cooperate with rivals can constitute anticompetitive conduct and violate §2." *Id*. at 408 (citation omitted). Further, contrary to Defendant's argument, *Trinko* does not hold that there is no monopoly leveraging offense independent of attempted monopolization, and this Court has recognized such a cause of action. *See A.I.B. Express, Inc. v. FedEx Corp*., 358 F. Supp. 2d 239, 246-47, 250-51 (S.D.N.Y. 2004) (concluding Plaintiff states a claim for monopoly leveraging following *Trinko* even though Plaintiff did not adequately plead attempted monopolization).

Defendant is also incorrect that patent misuse is "not an affirmative cause of action." ECF No. 16 at 3. As this Court has held, such an argument is "without merit." *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 551-53 (S.D.N.Y. 2007). Indeed, in more recent cases than the one cited by Defendant, "the Federal Circuit has allowed such claims without comment." *Id*. at 552-53 & n.70.

Finally, Defendant ignores significant antitrust jurisprudence in suggesting that its product redesign is immune from antitrust challenge. As the Second Circuit has recognized, the "introduction of a new product may violate §2 if a monopolist acts to compel customer choice by withdrawing a substitute product from the market," just as Plaintiffs have alleged here. *Ne. Tel. Co. v. Am. Tel. & Tel. Co*., 651 F.2d 76, 93 & n.6 (2d Cir. 1981); *see, e.g.*, *C.R. Bard, Inc. v. M3 Sys., Inc*., 157 F.3d 1340, 1382-83 (Fed Cir. 1998) (holding evidence sufficient to support jury's verdict that a product redesign improperly maintained Bard's monopoly position); *Microsoft Corp*., 253 F.3d at 65-67 (holding "design changes" that reduced rivals' market share and protected Microsoft's monopoly to be anticompetitive conduct "in violation of §2"); *Xerox*, 511 F. Supp. 2d at 388 (product redesign which suppresses competition can violate the antitrust laws); Compl. ¶¶ 24-26, 86, 237-52. Thus, "new product introductions by a monopolist are not ipso facto immune from antitrust scrutiny," *GAF Corp. v. Eastman Kodak Co*., 519 F. Supp. 1203, 1226 (S.D.N.Y. 1981) (citing *Ne. Tel Co*., 651 F.2d at 93), and any rebuttal argument that the product redesign serves a valid business justification is a factual inquiry not appropriate for resolution on a motion to dismiss, *Xerox*, 511 F. Supp. 2d at 389.[6]

Respectfully submitted,

By: ___/s/ Dan K. Webb___

Dan K. Webb

Aldo A. Badini

cc: All Counsel of record

---

[6] Defendant also challenges Plaintiffs' market definition, but neither cited case helps Defendant. In *Global Discount Travel Services v. Trans World Airlines, Inc*., the Court rejected a market defined as a single brand (TWA). 960 F. Supp. 701, 705 (S.D.N.Y. 1997). Similarly, in *Coffee.org v. Green Mountain Coffee Roasters, Inc*., the only defined market was that for "GMCR's own patented and trademarked K-Cup product." No. 2:11–CV–02031, 2012 WL 511485, at *5, 7 (W.D. Ark. Feb. 15, 2012). None of the proposed markets here are limited to one brand. Moreover, "because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd v. Exxon Corp*., 275 F.3d 191, 199-200 (2d Cir. 2001); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 482 (1992). Indeed, *Global Discount* distinguished *Eastman Kodak* on the basis that — as Plaintiffs allege here — consumers "were effectively 'locked in' to buy replacement parts and services because of their purchase of a Kodak machine." 960 F. Supp. at 705; *see* Compl. ¶¶ 24-25, 237-52, 271-76. Thus, this Court should follow the treatment outlined by *Eastman Kodak*, endorsed by *Global Discount Travel*, which concluded that "[i]n *Kodak*, the Court adopted a test that determines the relevant market by a 'factual inquiry into the 'commercial realities' faced by consumers.'" *Id*. Defendant impermissibly seeks to short-circuit such a factual inquiry in its proposed motion to dismiss.